## WELLMORE COAL CORPORATION, Petitioner,

v.

## James R. STILTNER; Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

### No. 95–1727.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 1, 1995.

Decided April 18, 1996.

---

**ARGUED:** Ronald Eugene Gilbertson, Kilcullen, Wilson & Kilcullen, Chartered, Washington, D.C., for Petitioner. Elizabeth Ann Goodman, United States Department Of Labor, Washington, D.C., for Respondent Director; Lawrence Lee Moise, III, Vinyard & Moise, P.C., Abingdon, Virginia, for Respondent Stiltner. **ON BRIEF:** Thomas S. Williamson, Jr., Solicitor of Labor, Donald S. Shire, Associate Solicitor, Patricia M. Nece, Counsel for Appellate Litigation, United States Department of Labor, Washington, D.C., for Respondent Director.

Before NIEMEYER, HAMILTON, and MICHAEL, Circuit Judges.

Affirmed by published opinion. Judge MICHAEL wrote the opinion, in which Judge NIEMEYER and Judge HAMILTON joined.

## OPINION

MICHAEL, Circuit Judge:

Wellmore Coal Corporation (Wellmore) appeals from the Benefit Review Board's affirmance of an administrative law judge's award of black lung benefits to James R. Stiltner.

We are first asked to interpret regulations governing (prehearing) "informal conferences" scheduled in black lung claims to

bring about the voluntary resolution of issues. Specifically, when a claimant's lawyer refuses to attend a conference and the operator's lawyer cannot attend because of a scheduling conflict, may the deputy commissioner go through the charade of holding a conference by himself and issuing a Memorandum of Conference (with a recommendation to deny the claim), which is deemed accepted by the parties if not objected to in thirty days? Or, must the deputy commissioner, instead of meeting by himself, notify the claimant that his claim will be considered abandoned if he or his representative does not appear for a conference? We conclude that the regulations require the latter course. Because the deputy commissioner did not pursue that course here, Stiltner is excused from his lawyer's failure to object to the Memorandum of Conference, which should not have been issued. Our reasoning differs from the Board's on the informal conference issue, but we agree with the Board that the ALJ was correct to consider the claim on the merits. As to the merits, we affirm the award of benefits.

## I.

The claimant in this case, James Stiltner, worked as a coal miner for thirty-two years, including twenty-three years underground. He stopped working due to breathing difficulties. On February 7, 1986, Stiltner, represented by a lawyer, filed a claim for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945. He named Wellmore as

the responsible operator. His claim was denied by a deputy commissioner of the Department of Labor's (DOL's) Division of Coal Mine Workers' Compensation, Office of Workers' Compensation Programs.[1] Thereafter, Stiltner requested a formal hearing before an ALJ. For the next several months, both parties submitted additional evidence.

After reviewing the additional evidence, the deputy commissioner issued a "Notice of Conference" pursuant to 20 C.F.R. § 725.416.[2] The notice instructed the parties to appear at an informal conference before the deputy commissioner on August 11, 1987. By letter dated July 31, 1987, Stiltner's lawyer said that "we respectfully waive the conference" because "we have found ... that these conferences are entirely unfruitful." The lawyer again asked the deputy commissioner to forward Stiltner's claim to an ALJ for a hearing. The operator, Wellmore, advised the deputy commissioner that it could not attend the conference due to a scheduling conflict. On August 7, 1987, the deputy commissioner informed Stiltner's lawyer by telephone that the conference would be held as scheduled.

Neither party appeared for the conference. But in accordance with past practice, the deputy commissioner acted as though a conference had been held. The deputy commissioner filled out a form called a "Memorandum of Informal Conference," a document prescribed by the regulations (§ 725.417) for memorializing a conference among the parties and the deputy commissioner.[3] Al-

---

**1.** The deputy commissioner (or his designee) is the initial "adjudication officer" who processes all claims and makes preliminary determinations. *See* 20 C.F.R. §§ 725.350(b), 725.351(a). "Deputy commissioners" are now called "district directors." *See* § 725.101(a)(11) (1995). For clarity, however, we will use only the title "deputy commissioner."

**2.** Section 725.416 reads in pertinent part as follows:

§ 725.416 *Conferences.*
(a) At the conclusion of the period permitted by § 725.414 for the submission of evidence, the deputy commissioner may conduct an informal conference in any claim where it appears that such conference will assist in the voluntary resolution of any issue raised with respect to the claim....

(b) The deputy commissioner shall notify the parties of a definite time and place for the conference and may in his or her discretion, or on the motion of any party, cancel or reschedule a conference.
(c) Any representative of an operator, of an operator's insurance carrier, or of a claimant must have sufficient authority to stipulate facts or issues or agree to a final disposition of the claim.
(d) Procedures to be followed at a conference shall be within the discretion of the deputy commissioner....

**3.** Section 725.417 reads in pertinent part as follows:

§ 725.417 *Action at the conclusion of conference.*
* * *

though no one showed up except the deputy commissioner, the memorandum reports that several issues were "discussed" and "resolved" at the conference.[4] The memorandum concluded with the deputy commissioner's recommendation that the prior denial of the claim be affirmed "[s]ince no additional information has been submitted."[5]

The deputy commissioner mailed the Memorandum of Conference, dated August 24, 1987, to the parties. The cover letter warned the parties that if they did not object within thirty days, the deputy commissioner's recommendation in the memorandum would be "considered accepted." *See* § 425.417(d). The parties were reminded that they could request a formal hearing before an ALJ but a new request was necessary even if a prior request had been made. Stiltner's lawyer received this letter and the Memorandum of Conference but did not respond. On May 4, 1989, about twenty months after the Memorandum of Conference was issued, Stiltner's lawyer inquired about the status of the claim. The DOL responded that the claim was considered abandoned and had been administratively closed. Stiltner's lawyer insisted that Stiltner was entitled to a hearing because he had requested one prior to the informal conference. After extended correspondence between Stiltner's lawyer and the DOL, the deputy commissioner (on September 15, 1989) finally forwarded the claim to an ALJ with instructions that the ALJ first decide whether Stiltner was entitled to a hearing.[6]

The ALJ decided that Stiltner was entitled to a hearing because he had made a timely request for a formal hearing prior to the informal conference. The ALJ concluded "that the claimant did not forfeit his right to a formal hearing by failing to attend the informal conference which was held without

---

(c) Within 20 days after the termination of all conference proceedings, the deputy commissioner shall prepare and send to the parties a memorandum of conference, on a form prescribed by the Office [of Workers' Compensation Programs], summarizing the conference and including the following:
(1) Date, time and place of conference;
(2) Names, addresses, telephone numbers, and status (i.e., claimant, attorney, operator, carrier's representative, etc.);
(3) Issues discussed at conference;
(4) Additional material presented (i.e., medical reports, employment reports, marriage certificates, birth certificates, etc.);
(5) Issues resolved at conference; and
(6) Deputy commissioner's recommendation.
(d) Each party shall, in writing, either accept or reject, in whole or in part, the deputy commissioner's recommendation, stating the reasons for such rejection. If no reply is received within 30 days from the date on which the recommendation was sent to parties, the recommendation shall be deemed accepted.

4. In the space under "Issues Discussed at Conference," the deputy commissioner wrote the following:
a) If the claim was timely filed.
b) If the claimant was a miner within the meaning of the Act.
c) If the miner worked as a miner after December 31, 1969.
d) The length of the miner's coal mine employment.
e) If the miner has pneumoconiosis as defined by the Act and regulations.
f) If the miner's pneumoconiosis was caused by his coal mine employment.

g) If the miner is totally disabled due to pneumoconiosis.
h) The identity of the responsible operator for this claim.
i) If the miner's most recent period of cumulative coal mine employment of not less than one year was with the named responsible operator.
j) The identity of the miner's dependents within the meaning of the Act.
Under "The following issues were resolved," the deputy commissioner wrote:
a) That the claim was timely filed.
b) That the claimant was a miner within the meaning of the Act.
c) That the claimant worked as a miner after December 31, 1969.
d) That Wellmroe [sic] Coal Co. is the responsible operator for this claim.
e) That the miner's most recent period of cumulative employemtn [sic] of not less than [sic] one year was with the Wellmore Coal Co.
f) That the miner's wife Stella is his dependent within the meaning of the Act.
The issues were drawn from another form checklist entitled "STIPULATION OF UNCONTESTED AND CONTESTED ISSUES." The "stipulation" was signed only by the deputy commissioner. "Not present" was written in the signature spaces for the parties or their representatives.

5. Actually, both parties submitted a considerable amount of additional evidence after the deputy commissioner's initial denial of Stiltner's claim.

6. Stiltner engaged a new lawyer in advance of the proceedings before the ALJ.

any of the parties present." Nor did "the failure of [Stiltner's] counsel to respond to the Memorandum of Conference ... operate to effect an abandonment of the claim," the ALJ said. He reasoned that the memorandum "simply affirmed the prior denial [of benefits] and restored the state of the proceedings to the level of the request for hearing still outstanding and clearly demanded by the claimant as a matter of right." The ALJ then examined the merits of Stiltner's claim. He found that the medical opinion evidence established pneumoconiosis because all but one physician said that Stiltner suffered from pneumoconiosis. *See* § 718.202(a)(4). The ALJ found that Stiltner's pneumoconiosis arose out of coal mine employment based upon his thirty-two year employment history. *See* § 718.203. He then found that Stiltner established total disability because the most recent pulmonary function study yielded values indicative of disability under prescribed regulatory table values. *See* § 718.204(c)(1). Finally, the ALJ rejected medical opinions that attributed Stiltner's pulmonary impairment solely to cigarette smoking and found that other medical opinion evidence established total disability due to pneumoconiosis. *See* § 718.204(c)(4). Accordingly, he awarded benefits.

On January 30, 1995, the Board affirmed the ALJ's award of benefits. The Board rejected Wellmore's argument that the ALJ lacked jurisdiction to hear the claim because Stiltner failed to respond to the deputy commissioner's Memorandum of Conference. The Board reasoned that the deputy commissioner abused his discretion by holding an informal conference because the regulations permit one only "where it appears that such conference will assist in the voluntary resolution of any issue." § 725.416(a). Since Stiltner "did not desire to resolve issues in this forum," voluntary resolution of issues was

impossible. Therefore, the Board reasoned, the deputy commissioner had no authority to hold a conference, and no adverse consequences could flow from Stiltner's failure to respond to the Memorandum of Conference. The Board thus considered the merits of Stiltner's claim and found that the ALJ's award of benefits was supported by substantial evidence. This appeal followed.

## II.

The first question before us centers on the deputy commissioner's authority under the regulations when a claimant (or his lawyer) refuses to attend an informal conference set by the deputy to attempt "the voluntary resolution of [ ] issue[s] with respect to [a] claim." *See* § 725.416. Does the regulatory scheme allow the deputy commissioner to declare, as he did here, that a conference has nonetheless been held and proceed accordingly under the regulations? The regulations, we believe, do not support such a formalistic approach, and in no event does it make sense. However, the deputy commissioner does have the power to take firm action against a claimant who refuses to attend a scheduled conference.

The DOL's interpretation of a regulation is entitled to "substantial deference 'unless it is plainly erroneous or inconsistent with the regulation.'" *Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 159, 108 S.Ct. 427, 440, 98 L.Ed.2d 450 (1987) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)). *See also Adkins v. Director, OWCP*, 878 F.2d 151, 152–53 (4th Cir.1989). It is unclear whether the Board's interpretation ever merits deference.[7] But assuming that it does in some circumstances, deference is nonetheless inappropriate if the Board's interpretation is plainly erroneous and incon-

7. We recently noted that "[t]he level of deference ordinarily owed to the Board's interpretation of regulations ... is a difficult question." *Malcomb v. Island Creek Coal Co.*, 15 F.3d 364, 367 n. 2 (4th Cir.1994). Generally speaking, the Board's interpretation of regulations is not entitled to deference. *Id.; Bethlehem Mines Corp. v. Massey*, 736 F.2d 120, 123 n. 1 (4th Cir.1984). *But cf. Fleetwood v. Newport News Shipbuilding & Dry Dock Co.*, 776 F.2d 1225, 1228 (4th Cir.1985)

(holding that Board's interpretation of a statute is entitled to deference). But deference may be appropriate when the Board interprets regulations involving its own procedural rules rather than regulations governing substantive law. *Malcomb*, 15 F.3d at 367 n. 2; *see, e.g., Director, OWCP v. Hileman*, 897 F.2d 1277, 1280 (4th Cir.1990) (deferring to Board's interpretation of its own regulations that set forth filing deadlines for en banc petitions to the Board).

sistent with the regulations. *See Mullins Coal Co.,* 484 U.S. at 159, 108 S.Ct. at 440; *Adkins,* 878 F.2d at 152–53.

■ Stiltner argues that the Board correctly concluded that the deputy commissioner lost his authority to hold an informal conference once Stiltner's lawyer waived the conference with a "clear[ ] express[ion] that he did not desire to resolve issues in this forum." In contrast, the DOL and Wellmore argue that the deputy commissioner was entitled to hold an informal conference and issue a Memorandum of Conference, despite the parties' absence, and that Stiltner accepted the denial of his claim by failing to object to the memorandum. We conclude that both arguments are plainly erroneous and inconsistent with the regulations. *See Mullins Coal Co.,* 484 U.S. at 159, 108 S.Ct. at 440; *Adkins,* 878 F.2d at 152–53. The regulations simply do not allow the parties to waive an informal conference; and if they fail to attend, the deputy commissioner must deal with that failure rather than holding the conference without the parties.

### A.

The Board ruled that when a party's lawyer decides that an informal conference would not be useful, the party may waive the conference. That part of the Board's decision turns the regulations upside down.

■ First of all, it is the deputy commissioner, and he alone, who has the power to schedule an informal conference if "it appears [to him] that such conference will assist in the voluntary resolution of any issue raised with respect to the claim." § 725.416(a). The regulations do not allow a scheduled conference to be waived unilaterally by a party. According to the regulations, only the deputy commissioner "may in his or her discretion, or on the motion of any party, cancel or reschedule a conference." § 725.416(b). The right to move for cancellation of a conference is hardly the right to waive a conference. If a party moves to cancel or reschedule a conference, then the deputy commissioner, not the party, decides whether the conference will be cancelled or rescheduled. A motion to cancel would be

pointless if the deputy commissioner could not require a conference. The deputy commissioner's Notice of Conference confirms this interpretation. It informs the parties that attendance at conferences is mandatory and that requests for cancellation will be granted "only ... for reasonable cause shown at the discretion of the Deputy Commissioner."

Second, the regulations state that "[t]here shall be no right to a hearing until the processing and adjudication of the claim by the deputy commissioner has been completed." § 725.450. *See also* § 725.451 ("After completion of proceedings before the deputy commissioner ... any party may in writing request a hearing on any contested issue of fact or law."). These regulations would be superfluous if a party could waive informal conference proceedings before the deputy commissioner.

Our reading is confirmed by the pertinent regulatory history. The DOL's comments to § 725.416 (Conferences) specifically state that informal conferences are not waivable:

> *Comments received:* (a) A number of comments urge the Department to do away with conferences altogether, or to permit any party to waive a conference. . . .
>
> *Discussion and changes:* (a) The conference is ... an integral part of the claims process. [T]he Department does not agree that a party should be able to waive a conference.

43 Fed.Reg. 36,794–95 (1978). Similarly, the DOL's comment accompanying § 725.451 (Request for hearing) makes clear that a party may not waive prehearing procedures:

> (b) One comment recommends that the deputy commissioner should be required to terminate the processing of a claim as soon as a hearing is requested, and immediately forward the claim for a hearing. . . .
>
> (b) A party should not be allowed to proceed to a hearing before informal procedures are completed. It is not appropriate for a hearing to go forward until the issues are fully identified and most evidentiary development completed.

43 Fed.Reg. 36,797 (1978).

Third, informal conferences serve several useful purposes, all of which would be under-

mined if a party could refuse to participate. The regulations state that informal conferences are called to "assist in the voluntary resolution of [ ] issue[s]." § 725.416(a); *see* § 725.416(c). The comments to the regulations explain that informal conferences afford the parties "an opportunity to discuss the evidence and issues and crystalize their opinions. [T]hey greatly aid in narrowing issues, eliminating surprise, and in some instances dispensing with the need for formal proceedings." 43 Fed.Reg. 36,794–95 (1978). The conference is particularly geared toward achieving stipulations. Experience has shown, according to the DOL, that "in most instances conferences expedite rather than delay the final disposition of claims." *Id.*

The regulations sensibly vest the deputy commissioner, rather than the parties, with the authority to decide whether an informal conference will be held. As a neutral third party, the deputy commissioner oversees the development of both sides of the case from the initial filing of the claim. "Because of his or her experience in dealing with the issues and parties, the deputy commissioner is in the best position to determine when a conference would be useful." 43 Fed.Reg. 36,795 (1978).[8]

We conclude that the informal conference regulations and the purposes of the conference are plain enough that a party cannot avoid attending unless the deputy commissioner "in his or her discretion, or on the motion of any party, cancel[s] ... [the] conference." *See* § 725.416(b). We, therefore, reject the Board's (and the ALJ's) implicit holding that a party may unilaterally waive an informal conference.

### B.

█ We next turn to the argument of the DOL and Wellmore. We agree with the first

half of their argument, that a party may not block an informal conference by attempting to waive it. However, we disagree with the second half of their argument, that the deputy commissioner has the discretion to hold a conference and render a decision (that is, issue a Memorandum of Conference) even if one or both parties fail to appear. First, the notion that the deputy commissioner may hold a conference without all parties present finds no support in the language of the regulations. Second, the conference's objectives cannot be achieved without the parties. Third, the interpretation of the regulations urged by the DOL (and Wellmore) undermines the deputy commissioner's authority to schedule meaningful conferences.

#### 1.

The plain language of the regulations contemplates conferences attended by both parties. Section 725.415 gives the deputy commissioner the discretion to schedule a conference in accordance with § 725.416. Section 725.416(a) states that "the deputy commissioner may conduct an informal conference in any claim where it appears that such conference will assist in the voluntary resolution of any issue raised with respect to the claim." Each party's representative at the conference "must have sufficient authority to stipulate facts or issues or agree to a final disposition of the claim." § 725.416(c). Both parties are required to sign any stipulation of contested and uncontested issues. *See* § 725.417(a). Both the regulations (§ 725.417(c)(3) & (5)) and the form prescribed by the regulations and used by the DOL to prepare a Memorandum of Conference require a listing of issues "discussed" and "resolved." The form concludes with the following: "Upon discussion of the issues among those present, ... the following recommendation is made [by

---

**8.** We think that informal conferences in black lung cases perform a function similar to pretrial conferences in civil actions under Fed.R.Civ.P. 16. Pretrial conferences are held for the purpose of narrowing issues, obtaining admissions and stipulations, and fostering settlement. The trial judge decides whether to convene a pretrial conference, and it may not be waived by the parties. *See* Fed.R.Civ.P. 16(a) ("the court may in its discretion direct the attorneys ... and any

unrepresented parties to appear before it for a conference ... before trial"); Fed.R.Civ.P. 16(f) (allowing sanctions for failure to appear at pretrial conference). *See also Lucien v. Breweur,* 9 F.3d 26, 28 (7th Cir.1993) (imposing sanctions for unrepresented party's failure to appear at pretrial conference); *Harrell v. United States,* 117 F.R.D. 86, 90 (E.D.N.C.1987) (imposing sanctions for attorney's failure to appear).

the deputy commissioner]." Clearly, the informal conference contemplated by the regulations cannot take place without all parties present. Nor can a valid or meaningful Memorandum of Conference be issued when the issues were not discussed by the parties and the deputy commissioner.

### 2.

When the deputy commissioner exercises his discretion and schedules an informal conference, he has necessarily concluded that a conference will "assist in the voluntary resolution of [ ] issue[s]." *See* § 725.416(a). Having determined that a conference would be useful, the deputy commissioner makes a mockery of his own determination by trying to hold a conference with himself. The very matter for which the conference was called (i.e., a voluntary resolution of issues) cannot be addressed without the parties.

### 3.

The interpretation of the regulations urged by the DOL and Wellmore undermines the deputy commissioner's authority to schedule meaningful conferences. If we allow the deputy commissioner to hold an unattended conference and issue a Memorandum of Conference (with a proposed determination included), a nonattending party can skip a step in claims processing simply by waiting and objecting to the memorandum. Thus, under the scheme the DOL encourages us to approve, a party could ignore with impunity the notice of conference, knowing that a timely objection to the Memorandum of Conference would completely excuse his failure to attend. We decline to adopt an interpretation that invites such convenient defiance of calls by the deputy commissioner for informal conferences.[9]

### 4.

We conclude that the DOL's interpretation of the informal conference regulations is plainly erroneous and inconsistent with the language and purpose of the regulations.

### C.

Our reading of the regulations does not undermine the deputy commissioner's authority to develop and process black lung claims. The regulations provide him with a specific mechanism to deal with a claimant's refusal to attend an informal conference. That mechanism is in § 725.409, which provides:

> § 725.409 *Denial of a claim by reason of abandonment.*
>
> (a) A claim may be denied at any time by the deputy commissioner by reason of abandonment where the claimant fails: (1) To undergo a required medical examination without good cause; or,
>
> (2) To submit evidence sufficient to make a determination of the claim; or,
>
> (3) *To pursue the claim with reasonable diligence.*
>
> (b) If the deputy commissioner determines that a denial by reason of abandonment is appropriate, he or she shall notify the claimant of the reasons for such denial and of the action which must be taken to avoid a denial by reason of abandonment. If there is no response to the notice within 30 days after such notice is sent, the claim shall be considered denied by reason of abandonment. . . .

(Emphasis added.)

In our view, a claimant's refusal to appear at a scheduled informal conference amounts to a failure "[t]o pursue the claim with reasonable diligence." § 725.409(a)(3). Here, Stiltner should have been notified that his claim was being denied by reason of abandonment and that he could avoid a denial by appearing at a scheduled informal conference. Stiltner did not receive the notice contemplated by this section. Instead, he received a Memorandum of Conference, even though a conference as contemplated by the regulations did not take place and a legitimate memorandum therefore could not be prepared. Because the deputy commissioner erred by issuing a Memorandum of Confer-

---

**9.** Although the approach urged by the DOL would punish (by claim dismissal) a claimant whose lawyer failed to object to a deputy com-

missioner's memorandum issued after an unattended conference, that approach would do nothing to punish the failure to attend a conference.

ence, Stiltner's failure to respond to it is excused.

### III.

We have examined the merits of Stiltner's claim by independently reviewing the record and considering the parties' arguments. We find (as did the Board) that the ALJ's decision to award benefits is supported by substantial evidence and is in accordance with law, *see Jewell Smokeless Coal Corp. v. Street,* 42 F.3d 241, 243 (4th Cir.1994), and we affirm as to the merits on the reasoning of the Board, *see Stiltner v. Wellmore Coal Corp.,* No. 92–2472–BLA (BRB Jan. 30, 1995).

### IV.

The award of black lung benefits is affirmed.

*AFFIRMED.*