**Slip Op. 03-49**

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: GREGORY W. CARMAN, CHIEF JUDGE**

| | |
|---|---|
| **FORMER EMPLOYEES OF TYCO ELECTRONICS, FIBER OPTICS DIVISION,** | : |
| **Plaintiffs,** | : |
| v. | :     **Court No. 02-00152** |
| **UNITED STATES DEPARTMENT OF LABOR,** | : |
| **Defendant.** | : |

[Plaintiffs' Motion for Judgment Upon the Agency Record is denied.  The Department of Labor's negative determination is remanded for further investigation.]

Dated: May 12, 2003

*Williams Mullen,* (*Jimmie V. Reyna*, *Francisco J. Orellana*), for Plaintiffs.

*Robert D. McCallum, Jr.*, Assistant Attorney General, *David M. Cohen*, Director, *Lucius B. Lau*, Assistant Director, *John N. Maher*, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, *Jay Reddy*, Office of the Solicitor, U.S. Department of Labor, Of Counsel, for Defendant.

**OPINION**

**CARMAN, CHIEF JUDGE**: This matter comes before the Court on Plaintiffs' Motion for Judgment Upon the Agency Record pursuant to USCIT Rule 56.1.  This Court has jurisdiction pursuant to 28 U.S.C. § 1581(d) (2000).  Plaintiffs challenge the United States Department of Labor's ("Labor") determination entitled Notice of Negative Determination On Reconsideration on Remand ("*Remand Results*").  (Pub. Supplemental Admin. R. at 15-18); *see also Tyco*

*Electronics, Fiber Optics Division; Glen Rock, PA; Notice of Negative Determination on Reconsideration on Remand*, 68 Fed. Reg. 5,655 (Feb. 4, 2003). As set forth below, this Court holds that the *Remand Results* are not supported by substantial evidence or otherwise in accordance with law. Therefore, this matter is remanded to Labor for further investigation consistent with the specific instructions contained herein.

### STANDARD OF REVIEW

This Court will uphold Labor's determination of eligibility for trade adjustment assistance "if it is supported by substantial evidence on the record and is otherwise in accordance with law." *Former Employees of Swiss Indus. Abrasives v. United States*, 830 F. Supp. 637, 639 (Ct. Int'l Trade 1993) (citations omitted); *see also* 19 U.S.C. § 2395(b). Pursuant to 19 U.S.C. § 2395(b),

> The findings of fact by the Secretary of Labor . . . , if supported by substantial evidence, shall be conclusive; but the court, for good cause shown, may remand the case to such Secretary to take further evidence, and such Secretary may thereupon make new or modified findings of fact and may modify his previous action, and shall certify to the court the record of the further proceedings. Such new or modified findings of fact shall likewise be conclusive if supported by substantial evidence.

19 U.S.C. § 2395(b) (2000). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." *Ceramica Regiomontana, S.A. v. United States*, 636 F. Supp. 961, 966 (Ct. Int'l Trade 1986), *aff'd*, 810 F.2d 1137 (Fed. Cir. 1987); *see also Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Further, Labor's findings of fact must be supported by reasonable analysis and not be arbitrary and capricious. *Former Employees of Marathon Ashland v. Chao*, 215 F. Supp. 2d 1345, 1350 (Ct. Int'l Trade 2002) (citation omitted).

Although "the nature and extent of the investigation are matters resting properly within the sound discretion of [Labor]," *Former Employees of CSX Oil & Gas Corp. v. United States*,

720 F. Supp. 1002, 1008 (Ct. Int'l Trade 1989) (quoting *Cherlin v. Donovan*, 585 F. Supp. 644, 647 (Ct. Int'l Trade 1984)), "good cause to remand exists if [Labor's] chosen methodology is so marred that [the] finding is arbitrary or of such a nature that it could not be based on substantial evidence." *Former Employees of Galey & Lord Indus. v. Chao*, 219 F. Supp. 2d 1283, 1286 (Ct. Int'l Trade 2002) (citations omitted). Under § 2395(c), this Court "shall have jurisdiction to affirm the action of the Secretary of Labor . . . or to set such action aside, in whole or in part." 19 U.S.C. § 2395(c).

## BACKGROUND

Plaintiffs, the former employees of the Tyco Electronics Plant, Fiber Optics Division located in Glen Rock, Pennsylvania ("Former Employees"), sought certification for North American Free Trade Transitional Adjustment Assistance ("NAFTA-TAA") benefits on July 27, 2001. (Pub. Admin. R. at 2.) Former Employees sought certification under 19 U.S.C. § 2331.[1] Section 2331(a)(1) provides:

> A group of workers . . . shall be certified as eligible to apply for adjustment assistance under this subchapter . . . if [Labor] determines that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated, and either–
>
> (A) that–
>     (i) the sales or production, or both, of such firm or subdivision have decreased absolutely,
>     (ii) imports from Mexico or Canada of articles like or directly competitive with articles produced by such firm or subdivision have increased, and

---

[1]Congress recently repealed 19 U.S.C. § 2331, folding the NAFTA-TAA program into a new trade adjustment assistance scheme under the newly-revised version of the Trade Act of 1974 renamed the Trade Act of 2002. *See* Pub. L. No. 107-210, § 123, 116 Stat. 933, 944 (2002). Because Former Employees' petition antecedes November 4, 2002, the effective date of the revised statute, they cannot benefit from the terms of the revised statute. *See id*. at § 151, 116 Stat. 953-954.

(iii) the increase in imports under clause (ii) contributed importantly to such workers' separation or threat of separation and to the decline in the sales or production of such firm or subdivision; or

(B) that there has been a shift in production by such workers' firm or subdivision to Mexico or Canada of articles like or directly competitive with articles which are produced by the firm or subdivision.

19 U.S.C. § 2331(a)(1) (2000).

Plaintiffs sought certification for benefits based on their belief that their job loss was a result of an increase in imports from Mexico and a result of a shift in production of fiber optic components to Mexico. (Pub. Admin. R. at 53.) According to the Former Employees, several other Tyco facilities in the Pennsylvania area had closed and all recent petitions for NAFTA-TAA had been granted. (*Id*. at 51.) The Pennsylvania Department of Labor and Industry initiated a preliminary investigation and denied the Former Employees' petition based on insufficient import information regarding like products and Tyco Electronic's initial survey response. (Conf. Admin. R. at 12-14.) The United States Department of Labor initiated an investigation of the Former Employee's NAFTA-TAA certification eligibility petition on September 4, 2001. *Investigations Regarding Certifications of Eligibility to Apply for NAFTA Transitional Adjustment Assistance*, 66 Fed. Reg. 48,708 (Sept. 21, 2001).

In the initial investigation, Labor denied the Former Employees' NAFTA-TAA petition on the grounds that imports from Mexico did not contribute importantly to the Former Employees' separation and there was no shift in production to Mexico. *Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance*, 66 Fed. Reg. 53,250, 53,252 (Oct. 19, 2001). The initial investigation consisted of one form letter data request sent to Tyco Electronics. (Conf. Admin. R. at 33-34.) In its written determination, Labor found that the predominant cause of the work separation was

related to a shift in production to an affiliated Tyco Electronics facility in Harrisburg, Pennsylvania. (Pub. Admin. R. at 19.)

On October 9, 2001, Former Employees filed a motion for administrative reconsideration of Labor's negative NAFTA-TAA determination, contending that their job separation was caused by a shift in production to Mexcio. (*Id*. at 54.) Based upon additional information provided during a conference call with Tyco Electronics company officials, Labor denied Former Employees' request for administrative reconsideration. *Tyco Electronics Fiber Optics Division, Glen Rock, Pennsylvania; Notice of Negative Determination Regarding Application for Reconsideration*, 67 Fed. Reg. 5,299 (Feb. 5, 2002). Labor stated that only "a negligible portion of the plant production was shifted to Mexico during the relevant period." (Pub. Admin. R. at 69.)

Appearing pro se, Former Employees appealed the negative determination by filing a complaint in this Court on January 30, 2002. (Pls.' Compl. at 1.) Plaintiffs' counsel was appointed by the Court to represent the Former Employees pro bono. Pursuant to the Court's scheduling order, Plaintiffs filed a Rule 56.1 Motion for Judgment Upon the Agency Record on June 28, 2002. Immediately after the Former Employees filed their Rule 56.1 Motion, Defendants sought Plaintiffs' consent to a voluntary remand. In seeking a voluntary remand, Defendant stated that "[a]fter review of the administrative record in light of the arguments petitioners made in their Rule 56.1 motion, defendant seeks a remand to Labor to conduct a further investigation and make a redetermination." (Def.'s Unopposed Mot. for Voluntary Remand at 2.)

On August 7, 2002, this Court issued an order that Defendant conduct a remand investigation and submit remand results by October 7, 2002. *Former Employees of Tyco Elecs.*

*v. United States*, No. 02-00152 (Ct. Int'l Trade Aug. 7, 2002) (order granting voluntary remand) ("Remand Order"). The Remand Order mandated that Labor "conduct further investigation, . . . [and] collect further evidence, including evidence from the plaintiffs." *Id*. at 1. Labor failed to timely comply with the Court's order and did not submit a remand determination to this Court on or before October 7, 2002. On October 17, 2002, Plaintiffs submitted information to Defendant's counsel for use in the remand determination ("October 17 information"). (Pls.' Br. at 5; Def.'s Br. at 9.) On November 12, 2002, Plaintiffs contacted Defendant to inquire about the status of the remand investigation. *Former Employees of Tyco Elecs. v. United States*, No. 02-00152, 2003 Ct. Intl. Trade LEXIS 23, at *3 (Ct. Int'l Trade March 5, 2003) (order granting Defendant leave to file out of time and awarding Plaintiffs attorney's fees). At that time, Defendant's counsel informed Plaintiffs' counsel that the remand investigation had not started. *Id*. On November 14, 2002, Defendant filed its first motion for leave to file the remand results out of time, requesting until January 6, 2003 to file the results. *Id*. On January 2, 2003, Defendant filed a second motion for leave to file the remand results out of time. *Id*. In its second motion, Labor requested until January 21, 2003 to file the results. *Id*. The *Remand Results* were filed with the Court on January 17, 2003. *Id*. at *4. This Court accepted the *Remand Results* out of time and awarded Plaintiffs' attorney's fees under USCIT Rule 16(f). *Id.* at *19.

In conducting the remand investigation, Labor contacted a Tyco Electronics company official and requested company-wide sales figures of the fiber optics components produced at the Glen Rock plant and a list of the major declining customers of the subject plant. (Pub. Supplemental Admin. R. at 2.) Tyco Electronics reported declining sales in its fiber optics division during the relevant time period. (Conf. Supplemental Admin. R. at 5.) Because of the reported declining sales, Labor surveyed the two reported major declining customers regarding

their purchases of fiber optics components during the relevant time period. (Pub. Supplemental Admin. R. at 17.) According to Labor, the surveys revealed that one customer did not increase its imports of like products or products competitive with the items produced at the Glen Rock plant. (*Id.* at 18.) The other customer reported no direct import purchases during the relevant period and a "relatively low" amount of indirect imports during the latter part of the relevant period. (*Id.*) Based on these findings, Labor "affirm[ed] the original notice of negative determination of eligibility." (*Id.*)

Plaintiffs filed their second Rule 56.1 Motion for Judgment Upon the Agency R. on February 24, 2003. (Pls.' Br. at i.) Plaintiffs ask this Court to certify the Former Employees for NAFTA-TAA eligibility or, alternatively, order an additional remand "with specific instructions [to Labor] on how to conduct a fair and meaningful investigation." (*Id.* at 28.) In Defendant's Response to Plaintiffs' second Rule 56.1 Motion, Labor opposes certification of eligibility but concedes that a second remand is necessary because the *Remand Results* "are not consistent with . . . the Court's order." (Def.'s Br. at 9.)

**PARTIES' CONTENTIONS**

I. *Plaintiffs' Contentions*

Plaintiffs contend that the *Remand Results* are not supported by substantial evidence or otherwise in accordance with law for the following six reasons. First, Plaintiffs contend that the *Remand Results* are inconsistent with instructions in this Court's Remand Order. (Pls.' Br. at 8-10.) Second, Former Employees assert that the *Remand Results* inappropriately rely on the underlying investigation which Labor conceded was inadequate. (*Id.* at 10-11.) Third, Plaintiffs contend that the *Remand Results* are not supported by substantial evidence given the fact that the remand investigation consisted of only two unverified customer surveys. (*Id.* at 12-14.) Fourth,

Plaintiffs contend that the *Remand Results* fail to address the statutory criteria under 19 U.S.C. § 2331(a)(1)(B) because Labor failed to investigate whether there was a shift in production. (*Id*. at 14-16.) Fifth, Former Employees contend that the *Remand Results* are contrary to law because Labor's decision to reject the October 17 information was arbitrary and capricious. (*Id*. at 16-18.) Sixth, Plaintiffs contend that the *Remand Results* should be rejected because Labor failed to verify information provided by Tyco Electronics and its customers, failed to address relevant import data, failed to examine Tyco's corporate organizational structure, and failed to conduct its investigation with the utmost regard for the interests of Plaintiffs. (*Id*. at 18-26.) Plaintiffs assert that the proper remedy is for the Court to order Labor to certify the Former Employees' eligibility for NAFTA-TAA benefits. (*Id*. at 26-28.) Alternatively, Plaintiffs ask this Court to remand to Labor with specific instructions to conduct a meaningful and fair investigation. (*Id*. at 28.)

First, regarding the merits of the *Remand Results*, Plaintiffs contend that the *Remand Results* are inconsistent with the instructions in this Court's Remand Order. (*Id*. at 8-10.) Plaintiffs note that this Court's Remand Order specifically instructs Labor "to conduct further investigation, [and] to collect further evidence, including evidence from the plaintiffs." (*Id*. at 8.) Plaintiffs contend that the *Remand Results* are "devoid" of any information from Former Employees. (*Id*. at 9.) Plaintiffs assert that although Defendant's counsel informed Plaintiffs that it would be improper for Labor to consider the October 17 information voluntarily submitted by Plaintiffs, Labor did not attempt to obtain any other information from the Plaintiffs as instructed to do so in the Remand Order. (*Id*.)

Second, Plaintiffs contend that the *Remand Results* inappropriately rely on the initial investigation which Defendant conceded was inadequate. (*Id*. at 10-11.) Plaintiffs cite to Defendant's Unopposed Motion for Voluntary Remand, in which Labor states that if the remand

investigation results in a "reaffirmation of Labor's previous [negative] determination," Labor will support its conclusion with "a more detailed factual and/or legal analysis." (*Id*. at 10 (citing Def.'s Unopposed Mot. for Vol. Remand at 2) (emphasis omitted).) However, Former Employees argue that the *Remand Results* lack such detailed analysis and merely reiterate the concededly inadequate initial investigation findings. (*Id*.)

Next, Plaintiffs contend that the *Remand Results* are not supported by substantial evidence given the fact that the remand investigation consisted of only two unverified customer surveys. (*Id*. at 12-14.) Although the *Remand Results* state that one customer decreased sales from the Tyco facility and did not increase its imports of like products, Plaintiffs contend that Labor fails to explain how this fact is relevant to a shift in production of fiber optic components to Mexico. (*Id*. at 13.) Plaintiffs also contend that "any data that show that sales with the U.S. plant decreased, while imports did not increase would indicate . . . a shift of sourcing to Mexican imports." (*Id*.) Plaintiffs contend that the second customer survey cannot be the basis for a reasoned analysis because it contained incomplete responses that were supplemented by information whose source was unidentified in the record. (*Id*. at 14.) Additionally, Former Employees assert that the declining sales data provided by the customers "should have prompted [Labor] to conduct an import analysis to see if imports of the product in question increased during the investigation period." (*Id*. at 15.)

Fourth, Plaintiffs emphasize that Labor failed to address the statutory criteria under 19 U.S.C. § 2331(a)(1)(B) because the investigation did not examine whether there was a shift in production. (*Id*. at 14-16.) Plaintiffs contend that Labor focused exclusively on sales data and the information from two customers, and did not consider any production data. (*Id*. at 15.) Former Employees contend that Labor is required to certify a group of workers for NAFTA-TAA

benefits if there is "a link between sales, production and import data, or [if there is] a shift in production to Mexico." (*Id*. at 15.) Plaintiffs contend that in the *Remand Results* Labor ignored the second possible basis for eligibility. (*Id*. at 15-16.)

Next, Plaintiffs argue that the *Remand Results* are contrary to law because Labor's decision to reject the October 17 information was arbitrary and capricious. (*Id*. at 16.) Although not a part of the administrative record, Plaintiffs contend that the October 17 information is "highly relevant to the investigation" and contains some information which is readily available to Labor, yet was ignored during the entire investigation. (*Id*. at 17.) According to Plaintiffs, the October 17 information includes the following: Tyco Electronics employee surveys; Tyco Electronics shipping documents; United States and Mexico trade data concerning fiber optic products from Mexico; and a June 2001 United States Customs Service Tariff Classification ruling letter on fiber optic products from Mexico made in response to a Tyco Electronics ruling request. (Pls.' Br. at Ex. 1.) Plaintiffs contend that "rejection of the data, and the failure of [Labor] to pursue the investigatory leads suggested by the data was arbitrary and capricious." (*Id*. at 17.)

Sixth, Plaintiffs contend that the *Remand Results* should be rejected because Labor failed to meet the threshold requirements for conducting an adequate investigation. (*Id*. at 19.) Plaintiffs contend that Labor should not have accepted unverified information from Tyco Electronics regarding the alleged shift in production to Tyco Electronics' Harrisburg, Pennsylvania plant. (*Id*. at 20.) Plaintiffs contend that the circumstances surrounding other recent Tyco plant closings should have prompted Labor to seek independent corroboration of the provided information. (*Id*.) Former Employees note that two plants that produced the same articles as the plant in question received positive NAFTA-TAA eligibility determinations within

months of the investigated time frame in this case. (*Id.* (citing *AMP, Inc., a Tyco International Ltd. Company, Fiber Optic Division, Middletown, Pennsylvania; Notice of Revised Determination on Reconsideration*, 65 Fed. Reg. 16,226 (Mar. 27, 2000); *Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance*, 66 Fed. Reg. 54,783, 57,784 (Oct. 30, 2001)).) Plaintiffs contend that Labor failed to conduct any import analysis even though the *Remand Results* state that certification was denied because increased imports did not contribute importantly to Former Employees' job separation. (*Id.* at 23.) Further, Plaintiffs contend that because Tyco Electronics is part of a larger corporate structure, Labor should have examined the corporate organization and the possibility of a two-step shift in production to Mexico. (*Id.* at 24.) Plaintiffs acknowledge Tyco Electronics' explanation that at the time Former Employees were separated from their job, the Glen Rock plant was a "quick turn around" production facility of items produced at the Mexican plant. (*Id.* at 24-25.) However, Plaintiffs question why Labor did not investigate Former Employees' claim that production was transferred during an earlier period of time from the Glen Rock facility to Mexico and the Glen Rock facility was merely kept open for a brief period following this shift in production in order to conduct quality assurance of the products from Mexico. (*Id.* at 25.)

In response to Labor's concession that a second remand is necessary in this case, Plaintiffs contend that this concession should be closely examined. (Pls.' Reply Br. at 9.) According to Plaintiffs, Labor asserts that the October 17 information was considered and that Labor merely failed to address the information in the *Remand Results*. (*Id.* at 3.) However, Plaintiffs contend that prior to this filing, "Defendant's position had been that [Labor] had not considered the [October 17 information]." (*Id.*) Former Employees contend that "[o]ral and written statements

between counsel indicate that the October 17 information was never considered by Defendant."
(*Id*.) According to Plaintiffs, in December 2002, when counsel were engaged in discussions
regarding Labor's request to file the *Remand Results* out of time, Defendant's counsel informed
Plaintiffs' counsel that Labor would not consider the October 17 information because to do so
would be "improper" because the information was not gathered by Labor and therefore, not
"officially part of the record." (*Id*. at 4.) Further, Plaintiffs contend that when Defendant sought
Plaintiffs' consent for another voluntary remand on March 5, 2003, Defendant's counsel
indicated that an additional remand was necessary so that Labor could consider the October 17
information. (*Id*.) Plaintiffs conclude by stating that "[i]t is not credible that Labor considered
[the October 17] information, but failed to cite its findings in the [*Remand Results*], and failed to
include the information in the remand record, and in the supplementary remand record supplied
to the Court." (*Id*. at 5.)

Former Employees contend that a remand merely to allow Labor to "rewrite the remand
investigation" to include a statement that it considered the October 17 information without
ordering further investigation will not be serve the purposes of the Court. (*Id*. at 6.) Plaintiffs
urge this Court, if an additional remand is found to be appropriate, to provide specific
instructions to Labor to thoroughly consider and evaluate the October 17 information. (*Id*.)

II. *Defendant's Contentions*

In its response to Plaintiffs' Rule 56.1 Motion, Labor contends that although the remand
investigation was conducted in good faith, the investigation "contains deficiencies." (Def.'s Br.
at 8.) However, Defendant contends that "Labor did consider [the October 17] information
collected by the Plaintiffs in making its determination." (*Id*. at 9.) Defendant acknowledges that
"Labor failed to formally acknowledge receipt of the evidence, document findings in light of the

evidence, and did not articulate a rationale concerning what effect the evidence had upon the investigation." (*Id*.) Defendant concedes that the remand results are not consistent with the Court's Remand Order; therefore, the case should be remanded to Labor again. (*Id*.)

Defendant contends that it is inappropriate for the Court to certify Plaintiffs for eligibility to receive NAFTA-TAA benefits. (*Id*.) Defendant asserts that the cases cited by Plaintiffs in support of their argument that this Court should order certification are distinguishable from the case at bar. (*Id*. at 10-11.) Defendant states that in *United Electric Radio*, the Court ordered Labor to certify the plaintiffs only after 5 inadequate remand investigations. (*Id*. at 10 (citing *United Elec. Radio and Machine Workers of Am. v. Martin*, 15 CIT 299 (1991)).) Further, Defendant contends that in *Former Employees of Hawkins Oil and Gas*, the Court waited until after the third inadequate remand investigation before ordering certification. (*Id*. at 11 (citing *Former Employees of Hawkins Oil and Gas, Inc. v. United States Dep't of Labor*, 814 F. Supp. 1111 (Ct. Int'l Trade 1993)).) Finally, Defendant distinguishes *Former Employees of Barry Callebaut*, by stating that the Court did not order certification until after the fourth inadequate investigation. (*Id*. (citing *Former Employees of Barry Callebaut v. Herman*, 240 F. Supp. 2d 1214, 1228 (Ct. Int'l Trade 2002)).) Defendant contends that in all three cases, "the Court relied upon measures short of certification before reaching the decision to order certification." (*Id*. at 11.) Further, Labor argues that ordering certification is only a "last resort" and the Court must find that a remand would be futile. (*Id*.) Defendant contends that a second remand in this case will "allow[] Labor to acknowledge, address, and make a part of the record" the October 17 information. (*Id*. at 12.)

Additionally, Labor contends that "this Court does not possess the authority to certify [Plaintiffs] in the absence of a finding [by Labor] that the statutory criteria have been satisfied."

(*Id*.)  Defendant contends that "there is no constitutional or statutory authority that empowers the Court to order Labor to certify [Plaintiffs] when no finding has been made by Labor that the statutory requirements for certification have been met." (*Id*. at 13.)  Defendant contends that although the Court can "remand a case to Labor for further evidence," the Court cannot "simply express its impatience over Labor's purported failure to conduct an 'adequate investigation' and direct labor to 'certify the employees' for the requested benefits." (*Id*. at 13-14.)  Defendant concludes by stating that "this Court would exceed its authority by ordering Labor to certify [Plaintiffs] in the absence of a finding by Labor that the statutory requirements have been met." (*Id*. at 15.)

## ANALYSIS

### I.    An Additional Remand is Necessary.

Although Labor has had four bites at this apple: 1) Plaintiffs' initial petition; 2) Plaintiffs' request for reconsideration; 3) Plaintiffs' complaint in this action; and 4) the remand ordered on August 2002, the Court finds that an additional remand is necessary and directs Labor to conduct further investigation and analysis concerning Plaintiffs' request for certification of eligibility to receive NAFTA-TAA benefits.  On remand, the Court instructs Labor to address the following issues.

### A.  Labor shall consider and analyze the October 17 information.

As Labor concedes, the *Remand Results* are in direct violation of this Court's Remand Order because they do not contain any information gathered from Plaintiffs.  The Court finds that Labor's failure to collect any information from Plaintiffs, as well as Labor's rejection of the October 17 information voluntarily submitted by the Plaintiffs was a result of Labor's arbitrary and capricious treatment of this remand investigation.  According to Plaintiffs, the October 17

information includes Tyco Electronics employee surveys as well as potentially relevant import data. (Pls.' Br. at 16-17.) Before the Court can consider the merits of Plaintiffs' claims, it is necessary for this information to be considered by Labor and made a part of the administrative record. The Court is not persuaded by Defendant's contentions that Labor considered the October 17 information submitted by Plaintiffs and merely failed to address such information in the *Remand Results*. On remand, Labor should detail its analysis and evaluation of the October 17 information. Labor is encouraged to conduct any further investigation that might be necessary to resolve any inconsistencies that are revealed in its analysis of the October 17 information versus the statements of Tyco Electronics company officials.

**B. Labor shall consider the propriety of conducting an import analysis to support the scant import information provided by the customer surveys.**

In the *Remand Results*, Labor concluded that Former Employees failed to qualify for NAFTA-TAA because Former Employees failed to meet the criteria under 19 U.S.C. § 2331(a)(1)(A)(iii): any increase in imports did not "contribute[] importantly to such workers' separation or threat of separation and to the decline in the sales or production of such firm or subdivision." (Pub. Supplemental Admin. R. at 18); *see also* 19 U.S.C. § 2331(a)(1)(A)(iii). This conclusion is based upon two customer surveys conducted after Labor had requested Tyco's sales figures for the relevant time periods. (*Id*. at 17-18.) One customer survey was properly completed and contains information that could have aided Labor's investigation. However, the other customer survey has incomplete sales and import data and does not seem to provide any helpful information for Labor's investigation. Regarding this second customer survey, Labor states in the *Remand Results* that "[one] major customer reported no direct import purchases during 1999, 2000 and January through September 2001. However, this customer reported that a

small percentage of the products purchased were indirect imports (products purchased from a domestic source that were wholly manufactured in a foreign country) during September 2001." (*Id*. at 18.) This statement seems to be only partly correct. Although this customer did in fact "report[] no direct import purchases during 1999, 2000 and January through September 2001" (Pub. Supplemental Admin. R. at 18), this customer failed to include <u>any</u> information for 1999 or 2000. (Conf. Supplemental Admin. R. at 10.) The missing purchase information for this customer was supplied by a Tyco Electronics company official. (*Id*. at 13-14.) The Court finds Labor's reliance on such incomplete customer surveys to be insufficient to support Labor's conclusion. Further, Labor failed to conduct any independent import analysis which might have substantiated or contradicted the information reported by the customers. Therefore, the Court instructs Labor to reconsider its determination regarding Plaintiffs' eligibility under 19 U.S.C. § 2331(a)(1)(A) and conduct further investigation if necessary to determine if imports "contributed importantly" to the Former Employees' loss of jobs. Additionally, Labor is instructed to assist the Court in understanding the seemingly contradictory sales information provided by Tyco Electronics for the articles produced at the Glen Rock facility for January - September 2000 and 2001. (*Compare* Conf. Admin. R. at 34, *with* Conf. Supplemental Admin. R. at 5.)

**C. Labor shall consider the arguments made in Plaintiffs' 56.1 Motion regarding a shift in production in light of the data contained in the October 17 information and conduct further investigation as necessary.**

In the *Remand Results*, Labor reiterates its conclusion that the only shift in production was a domestic shift to an affiliated plant in Harrisburg, Pennsylvania; therefore, Plaintiffs are not eligible for certification under 19 U.S.C. § 2331(a)(1)(B). (Pub. Supplemental Admin. R. at 18.) Contrary to the statement in Defendant's motion for voluntary remand, the *Remand Results* do not contain "a more detailed factual and/or legal analysis" to support the conclusion that a

shift in production to Mexico did not occur. (Def.'s Unopposed Mot. for Voluntary Remand at 2.) The only mention of a shift in production is contained in Labor's discussion of increased imports: "[the increase in imports occurred] after the decision by the subject firm to transfer production to Harrisburg, Pennsylvania and during the time of the completion of the domestic transfer." (Pub. Supplemental Admin. R. at 18.) The record does not indicate that Labor conducted any further investigation on remand regarding the alleged domestic transfer. Instead, Labor's statement would seem to indicate that Labor merely relies on the initial investigation. In seeking a voluntary remand after the initial investigation, Labor in essence conceded that the initial investigation was inadequate. (*See* Def.'s Unopposed Mot. for Vol. Remand at 2 (asserting that "[a]fter review of the administrative record in light of the arguments petitioners made in their 56.1 motion, defendant seeks a remand to Labor to conduct a further investigation and make a redetermination").) Labor's denial of Plaintiffs' eligibility for certification based on the initial investigation into a shift in production falls short of the reasoned analysis that is required to support Labor's conclusion.

The only information in the record that supports Labor's conclusions in the *Remand Results* are unverified statements from an untitled Tyco Electronics company official and the two customer surveys discussed above. (*See* Letter from Tom Christner Responding For Shane NorthCraft [sic], Tyco Electronics, Middleton [sic], Pennsylvania to Elliot Kushner of 11/13/02, Conf. Supplemental Admin. R. at 4-5.) During the reconsideration investigation, Labor obtained information from Tyco Electronics company officials during a telephone conference regarding the shift in production. (*See* Notes to Conference Call concerning Tyco Electronics, Fiber Optics Division, Glen Rock, Pennsylvania with Steve Reynosa and Sue Mullins and others on January 14, 2002, Conf. Admin. R. at 66-67.)

Although Labor may appropriately rely on the unverified statements of company officials, *see, e.g., International Union, UAW Local 1283 v. Reich*, 20 F. Supp. 2d 1288, 1297 n.15 (Ct. Int'l Trade 1998); *United Steel Workers of America, Local 1082 v. McLaughlin*, 15 CIT 121, 122 (1991), such unverified statements "will not amount to substantial evidence if [they are] contradicted by logic or other pertinent information in the record." *Former Employees of Pittsburgh Logistics Systems, Inc., v. United States Sec'y of Labor*, No. 02-387, slip op. at 15, 2003 Ct. Int'l Trade LEXIS 18, at *24 (Ct. Int'l Trade Feb. 28, 2003). As stated above, Labor failed to consider the October 17 information which, Plaintiffs contend, contains statements that contradict the Tyco Electronics officials' statements regarding a shift in production to Mexico. (Pls.' Br. at 17.) Such evidence, if properly considered by Labor, might suggest that Tyco Electronics' assertions are unsubstantiated and should be disregarded. By failing to even examine the data provided by Plaintiffs, Labor's *Remand Results* are not supported by substantial evidence in the record or otherwise in accordance with law.

On remand, Labor shall reexamine Plaintiffs' eligibility for certification under 19 U.S.C. § 2331(a)(1)(B). The remand results should set forth Labor's factual and legal analysis regarding a possible shift in production and include analysis of the October 17 information supplied by Plaintiffs. Labor should conduct any further investigation that is necessary to determine Plaintiffs' eligibility under § 2331(a)(1)(B).

## II. Plaintiffs' Motion for Certification is Denied.

Although Plaintiffs' arguments regarding why certification in this matter is appropriate have merit, the Court finds that an additional remand to Labor for further investigation is necessary to fully develop the administrative record before the Court. However, as the Court has warned in the past, "[s]hould Labor not perform a competent . . . investigation upon remand, the

Court will not remand for [an additional] investigation." *Barry Callebaut*, 177 F. Supp. 2d at 1312. Because the Court is ordering an additional remand, the Court declines to address Defendant's contentions regarding the authority of this Court to order certification.

CONCLUSION

Plaintiffs' Motion for NAFTA-TAA Certification is denied. This matter is remanded to the Department of Labor for further consideration and investigation of 1) the October 17 information submitted by Plaintiffs; 2) the propriety of conducting an import analysis to support the information contained in the customer surveys, 3) the seemingly contradictory information provided by Tyco Electronics regarding sales; and 4) the arguments made in Plaintiffs' 56.1 Motion regarding a shift in production in light of the data contained in the October 17 information.

_____
Gregory W. Carman,
Dated: May          , 2003          Chief Judge
       New York, New York