Slip Op. 04-34

# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: GREGORY W. CARMAN

|  |  |  |
|---|---|---|
| FORMER EMPLOYEES OF TYCO ELECTRONICS, FIBER OPTICS DIVISION,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF LABOR,<br>Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | Court No. 02-00152 |

[Defendant's Revised Determination on Remand is affirmed and this case is dismissed.]

*Williams Mullen, P.C.*, (*Jimmie V. Reyna*, *Francisco J. Orellana*) for Plaintiffs.

*Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, *Jeanne E. Davidson*, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, *Stephen Carl Tosini*, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, for Defendant.

Dated: April 14, 2004

### OPINION

This matter comes before the Court on Plaintiffs', Former Employees of Tyco Electronics, Fiber Optics Division, Glen Rock, Pennsylvania, submission of a letter dated March 11, 2004, in which Plaintiffs accepted, with certain reservations, the United States Department of Labor's determination in *Tyco Electronics, Fiber Optics Division, Glen Rock, PA; Notice of Revised Determination on Remand*, 68 Fed. Reg. 41,185 (July 10, 2003) ("*Second Remand Results*"), as implemented by a letter dated February 27, 2004, from Lenita Jacobs-Simmons, Regional Administrator, United Sates Department of Labor, to the Honorable Stephen Schmerin,

Secretary of Labor and Industry, Commonwealth of Pennsylvania ("Jacobs-Simmons Letter").

Based on the foregoing, and in the interest of expediting the process by which Plaintiffs will

obtain North American Free Trade Agreement Transitional Adjustment Assistance ("NAFTA-

TAA") benefits, this Court affirms the Department of Labor's *Second Remand Results*, as

implemented by the Jacobs-Simmons Letter; orders that the Clerk of this Court include the

Jacobs-Simmons Letter and Plaintiffs' letter to the Court of March 11, 2004, as part of the record

before the Court; and dismisses this action.

## BACKGROUND

The Court provided a full recitation of the background facts in its two prior opinions

issued in this case. *See Former Employees of Tyco Elecs. v. United States Dep't of Labor*, 264 F.

Supp. 2d 1322, 1323 (Ct. Int'l Trade 2003) (denying Plaintiffs' second motion for judgment on

the agency record and remanding the case to Defendant); *Former Employees of Tyco Elecs. v.

United States Dep't of Labor*, 259 F. Supp. 2d 1246, 1248 (Ct. Int'l Trade 2003) (denying

Plaintiffs' first motion for judgment on the agency record and accepting Defendant's remand

results out of time). The background facts that are pertinent to this decision are summarized

herein.

On July 27, 2001, Plaintiffs petitioned for certification under 19 U.S.C. § 2331[1] for

---

[1] Section 2331(a)(1) provides:

> A group of workers . . . shall be certified as eligible to apply for adjustment assistance
> under this subchapter . . . if [Labor] determines that a significant number or proportion
> of the workers in such workers' firm or an appropriate subdivision of the firm have
> become totally or partially separated, or are threatened to become totally or partially
> separated, and either–
> (A) that–
> > (i) the sales or production, or both, of such firm or subdivision have decreased
> > absolutely,

NAFTA-TAA benefits, based on their belief that their job loss was a result of a shift in production of fiber optic components to Mexico. (Pub. Admin. R. at 2, 53.) The Pennsylvania Department of Labor and Industry denied Plaintiffs' petition after an initial investigation. On September 4, 2001, Defendant initiated an investigation of Plaintiffs' NAFTA-TAA certification eligibility petition. *Investigations Regarding Certifications of Eligibility to Apply for NAFTA Transitional Adjustment Assistance*, 66 Fed. Reg. 48,708 (Sept. 21, 2001). After its initial investigation, the Department of Labor denied Plaintiffs' petition on the grounds that imports from Mexico did not contribute importantly to Plaintiffs' separation and there was no shift in production to Mexico. *Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance*, 66 Fed. Reg. 53,250, 53,252 (Oct. 19, 2001). The Department of Labor denied Plaintiffs' request for administrative reconsideration. *Tyco Electronics Fiber Optics Division, Glen Rock, Pennsylvania; Notice of Negative Determination Regarding Application for Reconsideration*, 67 Fed. Reg. 5,299 (Feb. 5,

---

> (ii) imports from Mexico or Canada of articles like or directly competitive with articles produced by such firm or subdivision have increased, and
> (iii) the increase in imports under clause (ii) contributed importantly to such workers' separation or threat of separation and to the decline in the sales or production of such firm or subdivision; or
>
> (B) that there has been a shift in production by such workers' firm or subdivision to Mexico or Canada of articles like or directly competitive with articles which are produced by the firm or subdivision.

19 U.S.C. § 2331(a)(1) (2000).

The Court notes that Congress repealed 19 U.S.C. § 2331, on August 6, 2002, folding the NAFTA-TAA program into a new trade adjustment assistance scheme under the newly-revised version of the Trade Act of 1974 renamed the Trade Act of 2002. *See* Pub. L. No. 107-210, § 123(a), 116 Stat. 933, 944 (2002). However, Plaintiffs' petition antecedes the November 4, 2002, effective date of the revised statute; thus, they cannot benefit from the terms of the revised statute. *See id.* at § 151, 116 Stat. 953-54.

2002).

Plaintiffs appealed the Department of Labor's negative determination by filing a complaint in this Court on January 30, 2002. (Pls.' Compl. at 1.) Immediately after Plaintiffs filed a motion for judgment on the agency record, Defendant sought Plaintiffs' consent to a voluntary remand. (Def.'s Unopposed Mot. for Voluntary Remand at 2.) In seeking a voluntary remand, Defendant stated that "[a]fter review of the administrative record in light of the arguments petitioners made in their Rule 56.1 motion, defendant seeks a remand to Labor to conduct a further investigation and make a redetermination." (*Id*.) Pursuant to the request for voluntary remand, this Court ordered Defendant to conduct a remand investigation and submit remand results by October 7, 2002. *Former Employees of Tyco Elecs. v. United States*, No. 02-00152 (Ct. Int'l Trade Aug. 6, 2002) (order granting voluntary remand). Due to Defendant's delay, as detailed in this Court's earlier opinion, the Department of Labor's results in the first remand, *Tyco Electronics, Fiber Optics Division; Glen Rock, PA; Notice of Negative Determination on Reconsideration on Remand*, 68 Fed. Reg. 5,655 (Feb. 4, 2003) ("*First Remand Results*"), were filed out of time on January 17, 2003. *Former Employees of Tyco Elecs.*, 259 F. Supp. 2d at 1248. Again, the Department of Labor denied Plaintiffs' eligibility to receive NAFTA-TAA benefits. *First Remand Results*, 68 Fed. Reg. 5,655. Plaintiffs filed their second motion for judgment on the agency record challenging the *First Remand Results*. *Former Employees of Tyco Elecs.*, 264 F. Supp. 2d at 1323. In its response to Plaintiffs' motion, Defendant conceded that a second remand was necessary because the *First Remand Results* "[were] deficient in so far as they did not address information obtained from the Plaintiffs" as directed in this Court's order granting Defendant's request for voluntary remand. (Def.'s Mem. in Partial Opp's to Pls.' Cmts. on Def.'s Negative Determination on Remand at 8.)

In May 2003, this Court remanded the case to the Department of Labor "for further consideration and investigation of 1) the [] information submitted by Plaintiffs; 2) the propriety of conducting an import analysis to support the information contained in the customer surveys, 3) the seemingly contradictory information provided by Tyco Electronics regarding sales; and 4) the arguments made in Plaintiffs' 56.1 Motion regarding a shift in production in light of the data contained in the [] information [obtained from Plaintiffs]." *Former Employees of Tyco Elecs.*, 264 F. Supp. 2d at 1333. On July 10, 2003, the Department of Labor published the *Second Remand Results* certifying Plaintiffs as eligible to receive NAFTA-TAA benefits. *Second Remand Results*, 68 Fed. Reg. 41,185.

## DISCUSSION

In the *Second Remand Results*, the Department of Labor stated that it had "requested and obtained new and additional information and clarification from the company regarding plant production shifts to Mexico." *Id*. After reviewing this information, Defendant "conclud[ed] that there was a shift of production to Mexico that contributed importantly to the worker separations and sales or production declines at the subject facility." *Id*. Based on this analysis, the Department of Labor certified Plaintiffs eligible to receive NAFTA-TAA benefits. *Id*.

Only July 25, 2003, Plaintiffs filed their response to the *Second Remand Results* stating that they were satisfied with Defendant's certification. (Pls.' Cmts. on Def.'s Revised Determination on Remand at 1.) However, in late August, Plaintiffs were informed by the Pennsylvania Department of Trade and Labor, the state agency responsible for administering the NAFTA-TAA benefits, that Plaintiffs would not receive basic trade readjustment allowances ("TRA") because the statutory 104-week eligibility period for those allowances had expired during the pendency of this litigation. (*See* Jacobs-Simmons Letter at 1-2 ("Federal law provides

that a worker otherwise meeting basic TRA eligibility requirements may receive basic TRA only during the 104-week period following the worker's most recent total qualifying separation. . . . Since [Plaintiffs'] certification was issued after the expiration of the 104-week eligibility period for basic TRA for most covered Tyco workers[,] . . . it was not possible for most of the workers to qualify for any basic TRA.")); *see also*, 19 U.S.C. § 2293(a)(2) ("trade readjustment allowance shall not be paid for any week after the close of the 104-week period . . . that begins with the first week following the week in which the adversely affected worked was most recently totally separated").

The Court convened a teleconference to discuss this matter on September 3, 2003. During the teleconference, the parties assured the Court that they would "work together to resolve this issue" so that benefits would be made available to Plaintiffs. (Letter from Def.'s Counsel to the Court dated 09/03/03.) From September 2003 to March 2004, the parties worked together to solve this problem and kept the Court apprised of the situation through weekly status reports. On February 27, 2004, Lenita Jacobs-Simmons, Regional Administrator for the United States Department of Labor sent a letter to the Honorable Stephen Schmerin, Secretary of Labor and Industry for the States of Pennsylvania advising Secretary Schmerin that, with respect to Plaintiffs, the Department of Labor was "modifying [its] interpretation of Federal law requirements for TRA." (Jacobs-Simmons Letter at 1.) Specifically, the Department of Labor advised Secretary Schmerin that:

> The special circumstances of the litigation involved in this situation dictate that we provide some flexibility to allow Tyco workers to obtain the NAFTA-TAA benefits they otherwise would have been able to obtain except for the long dely in issuing the certification. Where there has been undue and extreme delay in issuing a certification due to circumstances of litigation, and plaintiffs' actions did not substantially contribute to the delay, the 104-week basic TRA eligibility period shall not begin until the certification is issued. In this case, the Tyco litigation was unusually lengthy

and involved multiple remands, and the certification was issued only after the expiration of the 104-week eligibility period for most (if not all) Tyco workers. Equity and good conscience dictate that the Tyco workers be "made whole" by being restored to the position they would have occupied had there been no delay in issuing the certification.

(Jacobs-Simmons Letter at 2.) The Department of Labor explicitly limited the application of this equitable solution to this case, stating that "this action is unique and is a remedy only for this specific situation; it may not be construed by Pennsylvania or any other state as precedent-setting in state TAA or NAFTA-TAA benefit determinations for workers covered under other certifications." (Jacobs-Simmons Letter at 4.)

After reviewing the Jacobs-Simmons Letter, Plaintiffs informed the Court that they would accept the letter as resolution of this matter, but with reservations. (Letter from Pls.' Counsel to the Court of 03/11/04, at 2.) First, Plaintiffs were concerned that the letter only granted prospective benefits; thus, some expenses that Plaintiffs had incurred, which would have been reimbursable had the workers been certified when they originally filed their petition, would not be reimbursed because the 104-week time limit had expired. (*Id*.) Second, Plaintiffs were concerned that Defendant explicitly limited the scope and application of its solution only to this particular case. (*Id*.) Plaintiffs noted that this problem was likely to recur with other workers who seek judicial review of the Department of Labor's eligibility determinations in this Court. (*Id*.) Plaintiffs were pleased that Defendant was willing to expand the time limits for Plaintiffs in "equity and good conscience," but questioned why Defendant would not "demonstrate equity and good conscience with respect to other and future workers similarly situated." (*Id*. at 2-3.) Plaintiffs' Counsel informed the Court on March 12, 2004, that Plaintiffs had received notice from the Pennsylvania Department of Labor and Industry that they were eligible to receive TRA

benefits in accordance with the Jacobs-Simmons Letter. (*See* Letter from Pls.' Counsel to the Court of 03/12/04.) After stating their reservations, Plaintiffs expressed their appreciation that the Department of Labor had worked with them to find "the means to make them as whole as possible, under the circumstances." (Letter from Pls.' Counsel to the Court of 03/11/04.)

The Court notes Plaintiffs' reservations and affirms the Department of Labor's certification of Plaintiffs eligibility to receive NAFTA-TAA benefits.

CONCLUSION

The Court observes that the Department of Labor failed to follow this Court's specific instructions on remand. *Compare Former Employees of Tyco*, 264 F. Supp. 2d at 1333 (directing Defendant to consider specific information obtained from Plaintiffs), *with Second Remand Results*, 68 Fed. Reg. 41,185 (failing to mention any information obtained from Plaintiffs and granting certification based on "new and additional information and clarification from the company"). However, because Plaintiffs are satisfied with the Department of Labor's determination as implemented by the Jacob-Simmons Letter, (*see* Letter from Pls.' Counsel to the Court of 03/11/04), this Court affirms the *Second Remand Results* and orders the Clerk of this Court to include the Jacobs-Simmons Letter and Plaintiffs' letter to the Court of March 11, 2004, as part of the record before the Court. Accordingly, this case is dismissed.

_____/s/ Gregory W. Carman_____
Judge

Dated: April 14, 2004
    New York, New York